IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JAYSEN McCLEARY, | CV 24–06–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| DAVID NELMARK and SCOTT BEATTIE, | |
| Defendants. | |

Before the Court is Defendants' Motion to Dismiss Complaint.  (Doc. 12.) Defendants move to dismiss Plaintiff Jaysen McCleary's Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).  (*Id.* at 2.)  For the reasons discussed below, the Court grants the motion and dismisses McCleary's Complaint.

## FACTUAL BACKGROUND[1]

On December 19, 2018, Thomas William Starbuck and his daughter, Aynsley Ann Starbuck, filed a Petition with the Iowa District Court in Polk County, Iowa, alleging 33 counts of defamation and two counts of punitive damages against McCleary—Polk County Case No. LACL143177 (the

---

[1] This factual background is derived from the Complaint (Doc. 1) and documents attached to the Complaint (Docs. 1-1 to 1-8.)  This is only a limited summary of the proceedings in the Iowa District Court that underlie the instant action.

1

"defamation action").  On November 2, 2020, Judge David Nelmark of the Iowa District Court granted the Starbucks' motion for summary judgment and found McCleary liable for the defamatory statements but kept the scheduled trial setting in place for the sole purpose of determining damages.  On November 4, 2020, McCleary filed a brief requesting that the Iowa District Court reconsider its ruling on summary judgment.  On November 5, 2020, the Iowa District Court issued an order denying McCleary's request and reasserting its November 2, 2020, order. On June 7, 2021, the court proceeded with the damages trial.  McCleary, still proceeding pro se, did not appear and the jury awarded the Starbucks a total of $8,000,000.

On December 6, 2021, the Starbucks filed a petition for equitable relief against McCleary, alleging one count of fraudulent conveyance and one count of piercing the corporate veil—Polk County Case No. EQCE87175 (the "collections action").  Specifically, the Starbucks alleged that McCleary transferred $65,000.00 from his personal banking account into the banking account of Bela Animal Legal Defense and Rescue—a bison rescue owned by McCleary and located in Victor, Montana—and transferred ownership of his Jeep Gladiator to an automobile dealership after the court enjoined McCleary from transferring assets.

On January 11, 2022, Judge Nelmark entered an order enjoining McCleary from selling or transferring property owned by him.  On April 5, 2022, Judge Scott

Beattie of the Iowa District Court issued an Order Condemning Funds and commanding Release of Funds to the Plaintiffs (the Starbucks).  A garnishment of McCleary's funds, including Social Security disability benefit payments, followed. On April 6, 2022, Judge Nelmark entered a supplemental order prohibiting Bela Animal Legal Defense and Rescue from spending any assets so long as its bank account's balance was below $60,461.13.

The Starbucks filed an Application to Show Cause against McCleary on July 12, 2022, and another against Bela Animal Legal Defense and Rescue on July 13, 2022, for alleged violations of the Iowa District Court's injunction orders.  The Iowa District Court held a hearing on the Applications on September 9, 2022. McCleary did not refute the factual allegations in the Applications but maintained that his violations were not willful.  On October 20, 2022, Judge Nelmark issued an order on the Applications finding McCleary guilty of one count of contempt of court, pursuant to Iowa Code § 664A.7.  At McCleary's request, Judge Nelmark scheduled a sentencing hearing for November 2, 2022.

On October 31, 2022, McCleary appealed the defamation action judgment, arguing that the alleged defamatory remarks were protected by litigation privilege. On November 2, 2022, the Iowa District Court held a sentencing hearing in the collections action.  On November 29, 2022, Judge Nelmark issued a sentencing order in the collections action imposing a $500 fine and sentencing McCleary to 30

days in jail, with all but seven days suspended.  The court ordered that as an alternative to serving the custodial time, McCleary could provide his counsel with $10,679.33 to be held in trust to offset the funds spent in violation of the court's injunction.  On December 29, 2023, Judge Nelmark issued an order denying McCleary's request to vacate the 23-day contempt sentence and ordered McCleary to report to serve his 23-day sentence no later than January 11, 2023.

On February 23, 2023, the Iowa Court of Appeals issued its opinion in the appeal of the defamation action, ruling that the district court did not err in granting summary judgment in the Starbucks' favor on McCleary's liability for defamation. However, the Iowa Court of Appeals vacated the district court's judgment for damages and remanded for a new trial on damages.  On March 7, 2023, Judge Beattie entered two orders recognizing that McCleary's disability benefits are exempt from garnishment.  On June 7, 2023, the Iowa Supreme Court denied further review of the February 23, 2023, Iowa Court of Appeals opinion.

On September 29, 2023, the Iowa District Court held another hearing during which it again found McCleary in contempt of Court.  A sentencing order was entered on October 2, 2023, and on October 18, 2023, the Iowa District Court imposed mittimus on the previously withheld 23-day sentence.   In an order dated October 11, 2023, Judge Nelmark ordered McCleary to place the titles of all his vehicles with the Starbucks' attorney.  On October 29, 2023, Judge Nelmark

4

entered an order directing McCleary to place $48,136.08 in escrow with the court. On April 29, 2024, the Iowa District Court began a new trial on the issue of damages.

## PROCEDURAL BACKGROUND

On February 28, 2024, McCleary, proceeding pro se, filed the instant action against Defendants Judge David Nelmark and Judge Scott Beattie, the two Iowa District Court judges who presided over the various proceedings in the underlying defamation case and collections action.  (Doc. 1 ¶¶ 2–3.)  McCleary claims that Defendants violated his due process rights and seeks declaratory and injunctive relief.  Although McCleary does not cite 42 U.S.C. § 1983 in his Complaint, McCleary's claims all stem from the alleged deprivation of his Constitutional rights and therefore § 1983 provides McCleary's right of action.  42 U.S.C. § 1983; *see also Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) ("Section 1983 . . . creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States.").

Counts I through IV allege violations of McCleary's due process rights stemming from Judge Nelmark's contempt rulings and Judge Beattie's garnishment order.  In Count I, McCleary seeks a declaratory judgment that Judge Nelmark violated his due process rights "when he paid no attention to how McCleary used the funds he was ordered not to spend and found that McCleary's

5

violation was willful beyond a reasonable doubt." (Doc. 1 ¶ 61.) In Count II, McCleary seeks a declaratory judgment that Judge Nelmark violated his due process rights "when he chose to issue a sentence[—23 days in jail for contempt of court—]predicated on material omissions and misinformation." (*Id.* ¶ 70.) Count III seeks a declaratory judgment that Judge Nelmark violated his due process rights "when he chose to deprive McCleary of a meaningful opportunity to be heard at the September 29, 2023[,] contempt proceedings and when he denied McCleary's Motion for re-hearing." (*Id.* ¶ 81.) Finally, in Count IV, McCleary seeks a declaratory judgment that Judge Beattie violated his due process rights when Judge Beattie "ordered the garnishment of McCleary's disability money" and that Judge Beattie "continues to violate McCleary's due process rights by limiting his orders to a declaration that the garnishment was illegal without issuing any order for the return of that money to McCleary." (*Id.* ¶ 93.)

In Counts V through VIII, McCleary seeks declaratory and injunctive relief from the Iowa District Court's orders. In Count V, McCleary asks the Court to declare the contempt order from Judge Nelmark directing McCleary to report to jail on January 11, 2024, and serve 23 days void and unenforceable. (*Id.* ¶¶ 104, 111.) In Count VI, McCleary requests that the Court declare Judge Nelmark's contempt orders and order instructing McCleary to turn over title to his vehicles "void and unenforceable," and issue an injunction "against all such Orders." (*Id.* ¶

6

129.)  So, too, in Count VII, McCleary requests a declaratory judgment that Judge Nelmark's order dated October 29, 2023, directing McCleary to place money in escrow with the Iowa District Court is "void and unenforceable," and again requests that the Court issue an injunction against "all such Orders."  (*Id.* ¶ 148.) The relief McCleary requests for Count VIII is no different, McCleary asks the Court to grant an injunction rendering Judge Beattie's garnishment order "void ab initio" and seeks the return of his disability income.  (*Id.* ¶ 160.)

## DISCUSSION

Defendants move to dismiss the Complaint on four grounds: (1) lack of personal jurisdiction, (2) judicial immunity, (3) the *Rooker-Feldman* doctrine, and (4) the *Younger* abstention doctrine.  The Court will address each argument in turn. Where, as here, the plaintiff is appearing pro se, the court liberally construes the allegations in the complaint.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## I.    Personal Jurisdiction

First, Defendants move to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (Doc. 13 at 4.)  McCleary bears the burden of establishing that personal jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because the Court has not held an evidentiary hearing, McCleary "need only make a prima facie showing of jurisdictional facts."  *Id.*

Jurisdictional facts are derived largely from the complaint, unless controverted by a declaration or affidavit. *Id.*

The Court may exercise personal jurisdiction over a nonresident defendant only if: (1) the long-arm statute of Montana is satisfied and (2) the exercise of jurisdiction comports with Fourteenth Amendment due process requirements. *See Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). Montana's long arm statute, Montana Rule of Civil Procedure 4(b)(1), embodies principles of both general and specific jurisdiction and "permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *Davis v. Am. Fam. Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). If the requirements of Montana's long-arm statute are not met, the Court need not address due process. *See, e.g.*, *Evens v. Linngren*, No. CV 20-172-M-DWM-KLD, 2021 U.S. Dist. LEXIS 67915, at *5 (D. Mont. Feb. 24, 2021) *report and recommendation adopted,* No. CV 20-172-M-DWM, 2021 U.S. Dist. LEXIS 66033 (D. Mont. Apr. 5, 2021); *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (2003).

General jurisdiction exists where the defendant is "found within the state of Montana." Mont. R. Civ. P. 4(b)(1). "A party is 'found within' the state if he or she is physically present in the state or if his or her contacts with the state are so

8

pervasive that he or she may be deemed to be physically present there." *Simmons Oil Corp. v. Holly Corp.*, 796 P.2d 189, 194 (Mont. 1990).  In other words, "[a] nonresident defendant that maintains 'substantial' or 'continuous and systematic' contacts with the forum state is found within the state and may be subject to the state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum."  *Bi-Lo Foods, Inc. v. Alpine Bank*, 955 P.2d 154, 157 (Mont. 1998).  This is consistent with the federal rule, which states that general jurisdiction exists when a nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

Even where the Court lacks general jurisdiction, specific jurisdiction may be established if the plaintiff's cause of action arises from any of the following activities:

> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;
> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
> (F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

9

(G) acting as personal representative of any estate within Montana.

Mont. R. Civ. P. 4(b)(1)(A)–(G).

Taking the uncontroverted allegations in the Complaint as true, the Court does not have general or specific jurisdiction over Defendants under Montana's long-arm statute. McCleary does not allege any facts demonstrating that Defendants have any substantial or continuous contacts with Montana, as required for general jurisdiction. As identified in the Complaint, Defendants are citizens of the State of Iowa and McCleary does not allege that Defendants were ever physically present in, or connected to, Montana. McCleary also fails to plead any facts establishing specific jurisdiction over Defendants. Taking the allegations in the Complaint as true, and construing them liberally in McCleary's favor, there is no indication that Defendants have engaged in any of the activities set forth in Mont. R. Civ. P. 4(b)(1)(A)-(G) sufficient to confer specific jurisdiction.

McCleary's only argument regarding personal jurisdiction is that "there cannot be any contacts by an out of state defendant that is [sic] more devastating, powerful, profound, and meaningful than that of a State Judges [sic] reaching outside of their home State of Iowa to exercise judicial power and seize Montana property . . . and infringe on the constitutional rights of a Montana citizen." (Doc. 16 at 1–2.) McCleary provides no support for the premise that Defendants' judicial rulings in the Iowa District Court constitute sufficient contact with

Montana so as to establish personal jurisdiction over Defendants.  In fact, this

Court has previously rejected a similar argument, explaining that the "proper focus

of the inquiry is on [a defendant's] contacts with Montana, not the plaintiff's

contacts with Montana." *Evens*, No. CV 20-172-M-DWM-KLD, 2021 U.S. Dist.

LEXIS 67915, at *9; *see also Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("The

defendant-focused 'minimum contacts' inquiry [cannot be satisfied] by

demonstrating contacts between the plaintiff (or third parties) and the forum

State."); *Pyle v. Hatley*, 239 F. Supp. 2d 970, 981 (C.D. Cal. 2002) (concluding the

"issuance of an order by a Nevada judge to a party who appeared before the judge

is not sufficient to create personal jurisdiction in [California federal district court]

over the [Nevada] judge," even if the order had an effect in the forum state).

Because Montana's long arm-statute does not confer personal jurisdiction

over Defendants, the Court need not address whether exercising jurisdiction over

Defendants would comport with due process.  Absent personal jurisdiction, this

case is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

## II.    Judicial Immunity

Second, Defendants argue that they are immune from suit under the

principle of absolute judicial immunity.  (Doc. 13 at 7.)  Motions to dismiss on

grounds of judicial immunity are analyzed under Rule 12(b)(6).  To survive a

motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  Dismissal is appropriate "where there is no cognizable

legal theory or an absence of sufficient facts alleged to support a cognizable legal

theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017)

(internal quotation marks omitted).  "In general, the [Rule 12(b)(6)] inquiry is

limited to the allegations in the complaint, which are accepted as true and

construed in the light most favorable to the plaintiff"; however, the Court "need

not accept as true allegations contradicting documents that are referenced in the

complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v.*

*Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (internal citation omitted).

Pursuant to the doctrine of judicial immunity, judges are absolutely immune

from suit for judicial actions taken by them in the course of their official duties in

connection with a case, unless the judge acts outside the judge's judicial capacity

or in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12

(1991).  McCleary brings this action against Defendants for acts performed within

the scope of their judicial duties—judicial rulings made in the Iowa District

Court—and, with the exception of Count V, McCleary does not allege that

Defendants acted without jurisdiction.  McCleary only contends that the doctrine

of judicial immunity does not apply to state court judges in a suit for prospective

injunctive or declaratory relief.  (Doc. 16 at 2.)  The Court will first address the scope of the judicial immunity doctrine.

It is true that the Supreme Court held in 1984 that a judicial officer acting in his or her judicial capacity is not immune from actions under § 1983 seeking prospective injunctive relief.  *Pulliam v. Allen*, 466 U.S. 522, 541–42 (1984); *see also Forrester v. White*, 484 U.S. 219 (1988) (same).  The Ninth Circuit applied this rule in *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986), which McCleary cites for support of his argument.  However, Congress effectively abrogated *Pulliam* in 1996 by amending § 1983, which now states that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."  Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 309(c), 110 Stat. 3847.

In other words, the doctrine of judicial immunity now typically bars claims for declaratory or prospective injunctive relief against judicial officials acting in their judicial capacity.  *See Moore v. Brewster*, 96 F.3d 1240, 1243 (9th Cir. 1996) ("The judicial or quasi-judicial immunity available to federal officers is not limited to immunity from damages, but extends to actions for declaratory, injunctive and other equitable relief.").  Only when a declaratory decree is violated or declaratory relief is unavailable would plaintiffs have an end-run around judicial immunity.

13

McCleary does not allege that a declaratory decree was ever entered or that declaratory relief was unavailable.  In fact, declaratory relief against a judge's order is generally available by appealing the judge's order through the proper channels.

The Court next turns to McCleary's allegation in Count V.  In Count V, McCleary claims that Judge Nelmark acted without subject matter jurisdiction by issuing an order enjoining McCleary from spending or transferring funds from the bank account associated with the Bela Animal Legal Defense and Rescue even though the claim in the associated collection action was not yet ripe.  (Doc. 1 at 33–36.)  Despite McCleary's allegation, Judge Nelmark is immune from this claim as well.  The Supreme Court has held that as long as a judge has jurisdiction to perform the "general act" in question, he or she is immune "however erroneous the act may have been, . . . however injurious in its consequences it may have proved to the plaintiff and irrespective of the judge's motivation." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985).  Here, the "general act" that Judge Nelmark performed—the issuance of an injunctive order—is a function that Judge Nelmark has jurisdiction to perform.  At most, McCleary's allegation appears to be that Judge Nelmark made procedural errors in ruling on the motion for temporary injunction, and procedural errors are not sufficient to overcome judicial immunity.  *In re Castillo*, 297 F.3d 940, 947 (9th Cir. 2002), *as amended* (Sept. 6, 2002)

14

("[A]bsolute immunity insulates judges from charges of erroneous acts or irregular action, even when it is alleged that such action was driven by malicious or corrupt motives, . . . or when the exercise of judicial authority is flawed by the commission of grave procedural errors.").  Judge Nelmark is therefore immune from liability for the act of issuing the injunctive order.  *See Harvey v. Waldron*, 210 F.3d 1008, 1012 (9th Cir. 2000) (rejecting the argument that a judge acted without subject matter jurisdiction and was therefore not immune from suit where the judge had jurisdiction to perform the general act).

Furthermore, Defendants are immune from suit under the Eleventh Amendment.  In *Whole Woman's Health v. Jackson*, the Supreme Court clarified that Eleventh Amendment sovereign immunity "does not normally permit federal courts to issue injunctions against state-court judges."  142 S. Ct. 522, 532 (2021). The court explained that state court judges "do not enforce state laws as executive officials might; instead, they work to resolve disputes between parties" and errors made by state-court judges can be remedied through "some form of appeal."  *Id.* The Ninth Circuit, has applied the holding of *Whole Women's Health* to affirm that "state court judges cannot be sued in federal court in their judicial capacity under the Eleventh Amendment."  *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977, 981 (9th Cir. 2024). "Eleventh Amendment immunity is a threshold jurisdictional

issue," and federal courts "have no power to resolve claims brought against state courts *or state court judges* acting in a judicial capacity." *Id.*

Accordingly, Defendants are immune from suit and, therefore, McCleary fails to state a claim for which relief may be granted and this matter should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### III.   *Rooker-Feldman* Doctrine

Third, Defendants argue that the Court lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.  (Doc. 13 at 8.)  Rule 12(b)(1) governs a motion to dismiss for lack of subject matter jurisdiction.  "In considering jurisdiction questions, it should be remembered that 'it is a fundamental principle that federal courts are courts of limited jurisdiction.'"  *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978)).  "In reviewing a [Rule 12(b)(1)] motion to dismiss for lack of jurisdiction, the [C]ourt takes the allegations in the plaintiff's complaint as true."  *Wolfe v. Strankman*, 392 F.3d 358, 360 (9th Cir. 2004).  "When subject matter jurisdiction is challenged under [Rule] 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion."  *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

The *Rooker-Feldman* doctrine provides that federal district courts are

precluded from "'exercising subject-matter jurisdiction in an action [they] would otherwise be empowered to adjudicate under a congressional grant of authority,' if the action asks the federal district court to 'overturn an injurious state-court judgment.'" *Brown v. Duringer Law Grp. PLC*, 86 F.4th 1251, 1253 (9th Cir. 2023) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005)). The doctrine is "narrow" and "confined to cases (1) brought by state-court losers (2) complaining of injuries caused by state-court judgments (3) rendered before the district court proceedings commenced and (4) inviting district court review and rejection of those judgments." *Id.*  The doctrine does not present a barrier to plaintiffs who bring a general challenge to a state statute in federal court. *See Cooper v. Ramos*, 704 F.3d 772, 780–81 (9th Cir. 2012) (distinguishing between plaintiff's challenge to "the particular outcome in his state case," which was barred by the doctrine, and a plaintiff's general challenge to a state statute); *Morrison v. Peterson*, 809 F.3d 1059, 1070 (9th Cir. 2015) (finding that *Rooker-Feldman* did not bar a plaintiff's as-applied challenge to a California statute).

Under the *Rooker-Feldman* doctrine, district courts lack subject matter jurisdiction over actions "explicitly styled as a direct appeal" and the *de facto* equivalent.  *Cooper*, 704 F.3d at 777.  "To determine whether an action functions as a de facto appeal, [courts] pay close attention to the *relief* sought by the federal-court plaintiff."  *Id.* at 777–78 (internal quotation marks omitted).  Where the

17

plaintiff seeks review of and relief from state court judgments, the action is a *de facto* appeal. *Id.*; *see also Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003) ("It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court."). Further, where there is a *de facto* appeal, the district court also lacks jurisdiction over any other claims that are "inextricably intertwined" with the merits of a state court judgment. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 n.16 (1983); *Noel*, 341 F.3d at 1155. The Ninth Circuit has found claims "inextricably intertwined" where "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." *Cooper*, 704 F.3d at 779.

Despite the narrow scope of the *Rooker-Feldman* doctrine, McCleary's claims fall squarely within its ambit. Because McCleary's complaint is not styled as a direct appeal of the Iowa District Court orders, the Court looks to the relief sought to determine whether McCleary brings a *de facto* appeal. In Counts I through IV, McCleary seeks a declaratory judgment stating that Defendants violated his due process rights through their judicial decisions, (*see* Doc. 1 ¶¶ 54–93), and in Counts V through VIII, McCleary seeks declaratory judgments and injunctive relief against various orders Defendants issued against him, requesting that the Court declare these orders "void and unenforceable," (*see id.* ¶¶ 94–160.)

Counts I through VIII all constitute *de facto* appeals because they seek review of and relief from the judgments of the Iowa District Court.  Like the plaintiff in *Cooper*, McCleary "challenges the particular outcome in his state case" and "both asserts as his injury legal error or errors by the state court *and* seeks as his remedy relief from the state court judgment."  704 F.3d at 781.  Because all of McCleary's claims constitute *de facto* appeals of the Iowa District Court orders, the Court need not apply the "inextricably intertwined" test.

Finally, McCleary does not avoid the jurisdictional bar presented by *Rooker-Feldman* through asserting a general challenge to a state statute.  Rather, McCleary's challenge focuses on the particular outcomes in the Iowa District Court cases, over which *Rooker-Feldman* instructs this Court has no jurisdiction. *See Skinner v. Switzer*, 562 U.S. 521, 532 (2011).  As McCleary himself summarizes:

> This action . . . focuses on a small set of the abuses and violation of Due Process rights suffered by Mr. McCleary in [Iowa District Court] in the past few years; a small set of Orders issued by Honorables Nelmark and Beattie which McCleary asks this Honorable Court to declare void and relieve him from them because they violate his federal constitutional rights to due process.

(Doc. 1 ¶ 18.)  While McCleary asks this Court to declare void and unenforceable numerous Iowa District Court orders, he does not generally challenge the constitutionality of any state statute.

In summary, the *Rooker-Feldman* doctrine precludes this Court from exercising subject matter jurisdiction over this action and this matter should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## IV.   *Younger* Abstention

Lastly, Defendants argue that the Court should decline to exercise jurisdiction over this action pursuant to the *Younger* abstention doctrine.  (Doc. 13 at 10.)  *Younger* stands for the proposition that federal courts should avoid interfering with ongoing state criminal, civil, and administrative proceedings.  *See Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) ("*Younger* cautions against federal interference with ongoing state criminal, civil, and administrative proceedings.").  *Younger* provides an exception to this Court's typical obligation to exercise jurisdiction where it exists.  *Id.*  The Court declines to reach Defendants' argument under *Younger* because, as established above, the Court is without personal or subject matter jurisdiction to hear this matter.

## V.   Leave to Amend

Ordinarily, a pro se litigant should be given an opportunity to amend the complaint to overcome a pleading deficiency unless it is clear that amendment would be futile.  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995). Put simply, the legal hurdles McCleary faces in bringing this action in this Court

are insurmountable.  Accordingly, the Court declines to grant McCleary leave to amend his Complaint.

### CONCLUSION

The Court lacks personal jurisdiction over Defendants, McCleary fails to state a claim for which relief may be granted because Defendants are entitled to judicial and Eleventh Amendment immunity, and the Court lacks subject matter jurisdiction over this matter under the *Rooker-Feldman* doctrine.  Thus, dismissal is proper pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6).

Accordingly, IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 12) is GRANTED and McCleary's Complaint (Doc. 1) is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the Clerk of Court is directed to close this matter.

DATED this 9th day of May, 2024.

Dana L. Christensen, District Judge
United States District Court

21